## | Jacobs *against* Miller.

ERROR to the common pleas of *Perry* county.

The facts of this case and the principles relied upon are the same, as those stated in a former report of the case, in 3 *Watts* 477.

*Harris* and *Penrose*, for plaintiff in error.
*Biddle* and *Watts*, for defendant in error.

PER CURIAM.—We have suffered this cause to be drawn into revision, not because of any change of opinion in regard to it, but because it was argued, when first here, before a bare majority of the court, under circumstances that were thought to preclude a decision by a full bench; and because it was in truth decided by but a majority of these. It is certainly true that Mr Justice Huston expressed, in consultation, more than a doubt of the solidity of the principle. We have carefully reviewed the arguments, and, without having had an opportunity to confer with our absent brother as to the alleged persistence in his dissent, we all concur in the opinion formerly expressed, and chiefly for the reasons set forth in the printed report of it. But it is proper to say, in regard to what is not adequately noticed there, that the agreement of Clark, mentioned in the testimony of Mr Mahon, to suspend the registry of his mortgage in order to give the mortgagors an opportunity to borrow money, in Philadelphia, on the credit of an unincumbered estate, would, itself, be decisive of his want of equity. Having that purpose in their view, and having exacted, as preparatory to the execution of it, terms so rigid in respect to the subject matter of his immediate security, it is barely possible to believe they would have given him a judgment bond, had he required it, or have consented to the exercise of a control, by him, over the judgment bonds given to Stocker; or that they would have put it in his power to encumber the Philadelphia property, directly or indirectly, by any means whatever. To have used Stocker's bonds for that, or for any other purpose, whose direct means of accomplishment had been withheld from him, would have been an evasion of the spirit of his agreement. Then to grant that a judgment creditor ordinarily stands but in the equity of his debtor, what superior equity can Clark assert in contravention of the understanding had with him that he would not cross the mortgagors in their projected negociation of loans on the security which their property, without further incumbrance, might afford? It is said, that however the equities may have stood

[Jacobs v. Miller.]

originally, they were shifted by the act of Stocker in entering up judgment on his bonds; and that the accidental advantage accruing to Clark from it, ought not to be taken from him.   But to call it an advantage is to assume the point in dispute.   If Clark, as seems now to be conceded, was not entitled to control the application of Stocker's bonds or specialties, the discussion has furnished no reason why he should control the judgments into which they passed, substantially constituting with them the same securities in a new form.   What could be the difference in equity—which looks upon what ought to be done as already done, and consequently upon what has been wrongfully done as still undone—whether the warrants to confess judgment were executed or not, if they could be licitly executed for the security of but Stocker?   The securities were as much his exclusive property, and as subject to his exclusive control, in the one shape as in the other.   The mortgagors may have obtained advancements on the Philadelphia property on the faith of a promise to withdraw his lien—a promise which they might fairly procure, and which it is not at all improbable they did procure—and how could Clark object to an arrangement so entirely in unison with the tone of his own agreement?   In whatever aspect the case is viewed, it must appear that he lent his money on the direct security of the mortgaged premises, and that the party claiming under him can look to nothing else.

Judgment affirmed.